JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

TEAMSTERS LOCAL 853

## DEFENDANTS

J.C. PAPER

**(b)** County of Residence of First Listed Plaintiff Alameda County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Alameda County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Andrew H. Baker, BEESON TAYER & BODINE
1404 Franklin Street, 5th Floor
Oakland, CA 94612
(510) 625-9700

Attorneys (If Known)

David A. Leporiere, Esq.
Law Offices of David A. Leporiere
2377 Gold Meadow Way, Suite 100
(916) 526-2850

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☒ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | or Defendant) | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party | ☐ 900 Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | 26 USC 7609 | Determination |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus – | | Under Equal Access |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | to Justice |
| | Other | | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | ☐ 440 Other Civil Rights | | Actions | | State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

29 U.S.C. Section 185

Brief description of cause:

Complaint to compel arbitration under collective bargaining agreement.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)

(PLACE AND "X" IN ONE BOX ONLY)    ☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE    May 14, 2008

SIGNATURE OF ATTORNEY OF RECORD

1   ANDREW H. BAKER, SBN 104197
    BEESON, TAYER & BODINE, APC
2   1404 Franklin Street, 5th Floor
    Oakland, CA 94612-3208
3   Telephone:    (510) 625-9700
    Facsimile:    (510) 625-8275
4   Email:        abaker@beesontayer.com»

5
    Attorneys for Plaintiff
6   Teamsters Union Local 853

7

**FILED**

MAY 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

8               **UNITED STATES DISTRICT COURT**

9           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11
12  TEAMSTERS UNION LOCAL 853,                    **C08-02464    EDL**

                              Plaintiff,
13                                               **COMPLAINT TO COMPEL
                      v.                         ARBITRATION**
14
    J. C. PAPER,                                 **[29 U.S.C.§ 185]**
15
                              Defendant.
16

17          Plaintiff TEAMSTERS UNION LOCAL 853 ("Local 853") hereby complains and alleges as

18  follows:

19                                **JURISDICTION**

20          1.      This is a Complaint to Compel Arbitration pursuant to a written collective bargaining

21  agreement between an employer and a labor organization representing employees in an industry

22  affecting commerce.  This Court has jurisdiction over this action pursuant to Section 301(a) of the

23  Labor Management Relations Act ("LMRA"), 29 U.S.C. §185(a).

                            **VENUE (INTRADISTRICT ASSIGNMENT)**

24          2.      Pursuant to Section 301(c) of the LMRA, 29 U.S.C. §185(c), venue is appropriate in

25  the Northern District of California as the collective bargaining agreement between Plaintiff and

26  Defendant was executed in and governs the terms and conditions of employment for employees

27  represented by Plaintiff and working in this judicial district.  The acts and/or omissions alleged herein

28

1

COMPLAINT TO COMPEL ARBITRATION                                                           83978.doc

1     arose in the County of Alameda and thus this matter is properly assigned to the San Francisco or

2     Oakland Division of the Northern District Court.

3     **PARTIES**

4     3.     Plaintiff TEAMSTERS LOCAL UNION NO. 853 ("Local 853") is an unincorporated

5     labor association whose principal place of business is located within this judicial district in San

6     Leandro, California. Local 853's officers and authorized agents represent and act on behalf of its

7     members within this Judicial District.

8     4.     Defendant J.C. PAPER ("JC Paper") is engaged in business within the State of

9     California with a place of business located in Fremont, California. JC Paper conducts business in the

10     Northern District of California by, *inter alia*, warehousing and distributing paper products.

11     5.     At all times material herein, JC Paper has been an employer engaged in an industry

12     affecting commerce within the meaning of the Labor Management Relations Act, as amended (29

13     U.S.C. §152(2)(6) and (7)).

14     **CLAIM FOR RELIEF**

15     6.     During the events in this case, JC Paper and Local 853 were and remain parties to a

16     written collective bargaining agreement ("the Agreement") covering JC Paper's warehouse

17     employees and drivers employed at its Fremont, California, facility.

18     7.     Article VIII of the Agreement contains a grievance procedure for the resolution of

19     disputes "involving the interpretation and application" of the Agreement. Grievances not resolved at

20     the preliminary steps of the grievance procedure may be referred to an impartial arbitrator for final

21     and binding arbitration.

22     8.     Article V of the Agreement contain rules regarding the discipline and discharge of

23     employees covered by the Agreement, and includes the following: "The Company shall not

24     discharge nor suspend any employee without just cause."

25     9.     By notice dated May 11, 2007, JC Paper discharged its employee Jimmy Negrette, an

26     employee covered by the Agreement.

27     10.     On or about May 11, 2007, Local 853 filed a grievance protesting JC Paper's

28     termination of Negrette (herein "the Negrette Grievance").

2

COMPLAINT TO COMPEL ARBITRATION         83978.doc

1    11.    Local 853 and JC Paper were unable to resolve the Negrette Grievance at the

2    preliminary steps of the grievance procedure, and on or about August 29, 2007, Local 853 referred

3    the Negrette Grievance to arbitration for final and binding resolution.

4    12.    In October 2007, the parties selected William Riker as the arbitrator for the Negrette

5    Grievance.

6    13.    On January 23, 2008, the parties conducted a hearing on the Negrette Grievance

7    before Arbitrator Riker. At the hearing the parties agreed to frame the issue submitted to the

8    arbitrator as follows: "Was the Grievant terminated for just cause? If not, what is the appropriate

9    remedy?" The parties also agreed that the arbitrator would retain jurisdiction over the remedy, if any.

10    14.    At the hearing JC Paper attempted to introduce "after-acquired" evidence it obtained

11    after Negrette's termination when it investigated a list of complaints various employees filed with JC

12    Paper on or about May 8, 2007. Arbitrator Riker sustained Local 853's objection to hearing the after-

13    acquired evidence at the January 23, 2008, hearing, but left open the option for JC Paper to introduce

14    such evidence during the remedial phase of the arbitration, if the Arbitrator ruled in favor of the

15    Union on the just cause question.

16    15.    On or about April 2, 2008, Arbitrator Riker issued his Decision and Award on the

17    Negrette Grievance. His Award ordered Negrette to be reinstated and made whole, subject to a ten-

18    day suspension and a twelve-month "last chance" agreement. The Award also noted: "At the request

19    of the parties the arbitrator will retain jurisdiction for the purpose of resolving any issues that may

20    occur as a result of the implementation of the decision and award. A true and correct copy of the

21    Arbitrator's April 2, 2008, Decision and Award is attached hereto as Exhibit A, and incorporated

22    herein by reference.

23    16.    By letter dated April 4, 2008, JC Paper requested Arbitrator Riker "rescind" his

24    "ruling regarding the remedy" and schedule a hearing to permit JC Paper to "introduce the [after-

25    acquired] evidence that it sought to introduce at the hearing on January 23, 2008." A true and correct

26    copy of JC Paper's April 4, 2008, letter to the arbitrator is attached hereto as Exhibit B, and

27    incorporated herein by reference.

28

COMPLAINT TO COMPEL ARBITRATION                                                                3

83978.doc

1      17.    At all times since April 2, 2008, JC Paper has refused to reinstate Negrette to active

2    employment.

3      18.    By letter dated April 12, 2008, Arbitrator Riker confirmed a conference call with the

4    parties set for April 16, 2008, to discuss JC Paper's request for a hearing on remedial issues. In that

5    letter, Arbitrator Riker explained that his decision to place Negrette on a "last chance" agreement had

6    taken into consideration JC Paper's concerns regarding the employees' May 8, 2007, complaint about

7    Negrette, but also advised that "if either party would prefer to have another day of hearing to present

8    new evidentiary material for the arbitrator to consider, I will accommodate such request." Arbitrator

9    Riker also noted: "In any case, the arbitrator will continue to retain jurisdiction for purposes of

10    resolving any issues that my develop relating to the decision and award." A true and correct copy of

11    the Arbitrator Riker's April 12, 2008, letter is attached hereto as Exhibit C, and incorporated herein

12    by reference.

13      19.    By letter dated April 14, 2008, JC Paper advised Negrette:

14          [Y]our employment with JC Paper has been terminated as of July 17,
           2007 due to harassment of other employees, threats of violence against
15          other employees, and violation of company work rules. This
           termination is a result of a formal complaint filed against you by other
16          employees of the company and the result of the investigation into these
           complaints.
17

18    A true and correct copy of the April 14, 2008, letter is attached hereto as Exhibit D, and incorporated

19    herein by reference.

20      20.    At the April 16, 2008, conference call with Arbitrator Riker, JC Paper took the

21    position that Arbitrator Riker did not have jurisdiction over JC Paper's refusal to reinstate Negrette,

22    while the Union took the position that disputes regarding JC Paper's refusal to reinstate Negrette,

23    including JC Paper's purported July 17, 2007, termination of Negrette, dated April 14, 2008, are

24    subject to Arbitrator Riker's retained jurisdiction. Arbitrator Riker asked the parties to attempt to

25    come to an agreement on the jurisdictional dispute.

26      21.    The parties were unable to reach an agreement on the jurisdictional dispute, and by

27    letter date April 28, 2008, the Union asked Arbitrator Riker to make a ruling as to whether his

28    retained jurisdiction extended to the disputes over JC Paper's refusal to reinstate Negrette, including

4

COMPLAINT TO COMPEL ARBITRATION                                        83978.doc

1  disputes over JC Paper's April 14, 2008, termination letter. A true and correct copy of the Union's

2  April 28, 2008, letter to Arbitrator Riker is attached hereto as Exhibit E, and incorporated herein by

3  reference.

4      22.    By letter dated May 2, 2008, Arbitrator Riker ruled on the Union's request in the

5  Union's favor, noting: "The parties were very specific about the arbitrator retaining jurisdiction

6  relating to any issues that may arise as result of the decision and award." Arbitrator Riker proposed

7  several possible hearing dates to convene a hearing on the remedial disputes. A true and correct copy

8  of Arbitrator Riker's May 2, 2008, letter is attached hereto as Exhibit F, and incorporated herein by

9  reference.

10      23.    On or about May 8, 2008, JC Paper advised Local 853 that it would not submit

11  disputes regarding its refusal to reinstate Negrette, including disputes over the April 14, 2008,

12  termination notice, to Arbitrator Riker for resolution.

13      24.    By virtue of the foregoing, JC Paper has failed and refused to arbitrate the Negrette

14  Grievance. Said failure and refusal violates Article VIII of the Agreement. Said failure and refusal

15  has continued to this date.

16      25.    By failing and refusing to comply with its obligation to resolve the Negrette Grievance

17  through the grievance-arbitration procedure provided in the Agreement between the parties, with the

18  arbitrator mutually selected to hear that Grievance, and pursuant to Arbitrator Riker's retained

19  jurisdiction, JC Paper has violated the grievance and arbitration provisions of the Agreement. Unless

20  JC Paper is compelled to arbitrate before Arbitrator Riker the remedial disputes arising out of the

21  Negrette Grievance, as hereafter prayed, said violation will continue and Local 853 and the

22  employees it represents will be deprived of their contractual and federally protected rights to bargain

23  effectively with JC Paper and to obtain the benefits of their collective bargaining agreement with JC

24  Paper.

25      26.    In addition, JC Paper's refusal to arbitrate the parties' remedial disputes before

26  Arbitrator Riker is not taken or maintained in good faith, well-grounded in fact or warranted by law.

27  Accordingly, this is a proper case for an award to Local 853 of the attorneys' fees and costs incurred

28  herein.

1

2       WHEREFORE, it is respectfully prayed that this Court assume jurisdiction in the premises,

3 and following hearing issue its Order:

4     1.     Directing JC Paper, its officers, agents, attorneys, and all other persons subject to its

5 control, to submit the dispute between the parties herein described to Arbitrator William Riker for

6 final and binding determination pursuant to the procedures provided in the collective bargaining

7 agreement between the parties;

8     2.     To cooperate fully with Local 853 in agreeing to a hearing date and making all

9 appropriate arrangements for said arbitration;

10     3.     Directing JC Paper to reimburse Local 853 for its legal fees and costs of this

11 proceeding; and

12     4.     Granting such other relief the Court in its discretion deems just and equitable.

13

14 Dated: May 13, 2008                   BEESON, TAYER & BODINE, APC

15

16                       By: _____
                             ANDREW H. BAKER

17                       Attorneys for Teamsters Local 853

18

19

20

21

22

23

24

25

26

27

28

6

WILLIAM E. RIKER

ARBITRATOR

IN ARBITRATION PROCEEDINGS PURSUANT TO THE

COLLECTIVE BARGAINING AGREEMENT BETWEEN THE PARTIES

| | |
|---|---|
| In the Matter of a Controversy ) | |
| ) | |
| between ) | William E. Riker |
| ) | Arbitrator |
| TEAMSTERS LOCAL 853, ) | |
| ) | |
| Union, ) | |
| and ) | |
| ) | |
| JC PAPER, INC., ) | San Francisco, California |
| ) | April 2, 2008 |
| ) | |
| Employer, ) | |
| ) | |
| RE: Jimmy B. Negrette, Jr. Termination ) | |

This arbitration arises pursuant to the Collective Bargaining Agreement between JC

Paper Inc., hereinafter the "Company" and/or "Employer" and Teamsters Local 853,

hereinafter the "Union".

The arbitration was heard on Wednesday, January 23, 2008 at the offices of the

Company, 47422 Kato Road, Fremont, California before William E. Riker, who was

selected by the parties as the sole arbitrator.

15 SANTA PAULA AVENUE • SAN FRANCISCO, CALIFORNIA 94127-1541 • TELEPHONE/FAX: (415) 664-1538 • WERARB@Earthlink.net
Member, National Academy of Arbitrators

The parties agreed the matter is timely and properly before the arbitrator and that the arbitrator's decision is final and binding. The Employer and Union were afforded full opportunity to present their respective positions on the record. This included examination and cross-examination of witnesses, acceptance of relevant exhibits, and argument.

At the conclusion of the hearing the parties elected to submit post-hearing briefs due 30 days from receipt of the transcript. The briefs were posted in the U.S. Mail on or before March 7, 2008 and determined by the arbitrator to be timely filed.

## **APPEARANCES**

### ON BEHALF OF THE EMPLOYER

DAVID A. LEPORIERE, ESQ.
LAW OFFICES OF DAVID A. LEPORIERE
2377 Gold Meadow Way, Suite 100
Gold River, California 95670
(916) 526-2850

### ON BEHALF OF THE UNION

ANDREW H. BAKER, ESQ.
BEESON, TAYER & BODINE, APC
1404 Franklin Street, 5th Floor
Oakland, California 94612
(510) 625-9700

## **ISSUE**

Was the Grievant terminated for just cause? If not, what is the appropriate remedy?

## APPLICABLE PROVISION OF THE
## COLLECTIVE BARGAINING AGREEMENT

### ARTICLE V. DISCIPLINE AND DISCHARGE

Section 1. The Company shall not discharge nor suspend any employee without just cause. Warning notices given to an employee shall be in writing with a copy sent by certified mail to the Union. Such notice shall set forth the reason or reasons for the warning notice. The warning notice shall not be in effect for more than twelve (12) months from the date of said warning notice. In the event of discharge or suspension without just cause, the employee may be reinstated with payment for time lost.

### 701        EMPLOYEE CONDUCT AND WORK RULES

To ensure orderly operations and provided the best possible work environment, JC Paper expects employees to follow rules of conduct that will protect the interests and safety of all employees and the organization.

It is not possible to list all forms of behavior that are considered unacceptable in the workplace. The following are examples of infractions of rules of conduct that may result in disciplinary action, up to and including termination of employment.

…

Fighting or threatening violence in the workplace

…

## BACKGROUND

Grievant Jimmy B. Negrette Jr. commenced his employment with the Company at the

Fremont warehouse on March 28, 2006. On May 11, 2007 Negrette was given notice that

he was being discharged for violation of Company Policy 701: "After many, many

conversations with Jimmy and not seeing any improvement JC Paper decided to discharge

Jimmy from his current duties here at JC Paper. See attached document" (Joint Exhibit 2).

A grievance protesting the discharge was immediately submitted, giving the following

description of the complaint by the Grievant: "Was wrongfully and unjustly discharged

without just cause in my opinion. Revolving around an argument that was settled on the

warehouse floor between shop steward Welton McCarty, supervisor Alex McCall, fellow worker Al Sespene and myself. I have never received a verbal or written, nor was I spoken to by a shop steward about my conduct, or attitude. Finally, I was refused my Union representation in this termination process and my union rights" (Joint Exhibit 3).

The parties processed the grievance in accordance with the terms of the CBA but have not been able to resolve their dispute. The matter before the arbitrator for final and binding resolution is the same that gave rise to the grievance.

## POSITIONS OF THE PARTIES

### EMPLOYER

The evidence clearly demonstrates the Grievant's behavior will not be tolerated, and that his actions at the workplace were not acceptable. The evidence also shows the Grievant got into an altercation with another union member and threatened physical violence against the other employee, and at the time telling him that if he didn't like how he was doing things - we'll step outside and finish things. This was seen and heard by the shop steward and warehouse supervisor.

Based on the Company's investigation, which included speaking with a number of employees who had years of service with the Company, the Employer concluded that Jimmy Negrette was not suitable for reinstatement.

Due to the fact that supervisor Alex McCall heard Negrette's threat of violence against fellow worker Al Sespene the Company was of the opinion that Mr. Negrette should be terminated in accordance with JC Paper's written conduct and work rules, which prohibits not only fighting but threats of violence as well. JC Paper has a zero tolerance policy when it comes to violence and threats of violence in the workplace.

The threat was taken to be an immediate one due to the fact that the Grievant was challenging Mr. Sespene to fight at that moment and it was deemed credible because the Grievant has a history of violence, including a criminal conviction for battery, which he revealed to the Company at the time of his hire.    The Grievant's defense that his threat against his co-employee was actually an anger-management technique and not an actual threat is a self-serving statement. The Grievant is attempting to explain away a direct, immediate, and credible threat to the safety and welfare of a co-employee. The Grievant is neither contrite nor apologetic for his action, as he has professed he did nothing wrong and in fact in his opinion it was the most appropriate thing he could think of doing. The rationalization for his behavior, when threatening fellow employee Al Sespene by contending it was a learned methodology of releasing his anger, is not only unacceptable behavior but it is contrary to the rules of the workplace.

Termination was the appropriate remedy as the potential harm to JC Paper and its employees outweighs any right of the Grievant to continued employment. Based on the clear facts, which show that the Grievant made a viable threat against a fellow employee and a violation of Rule 701 – Employee Conduct and Work Rules, the Company requests that the grievance be denied and the termination be upheld in order to insure the safety and well being of the employees and the Company's operations.

## UNION

The Employer's argument in support of their action to discharge the Grievant has several flaws, principally that the Grievant did not make a serious threat warranting termination. The Employer has the burden to prove that the threat was a genuine, serious

threat, and not simply intemperate words uttered in the heat of the moment. Negrette's
"step-outside" comment could not reasonably be perceived as a real threat, warranting
summary termination. When the Grievant uttered his "step-outside" remark it was not in a
face-to-face manner, but he made it after his back was turned to Sespene and as he was
walking away from him. As testified by fellow employee Joe Florez, the remark made by
Negrette did not appear to be directed at anyone. As Negrette explained it's simply a
method that is used as a way to defuse anger while disengaging himself from a
confrontation, which he learned at a management anger class that he had taken in the past.

It is clear that after the incident Negrette and Sespene both returned to work and
continued to work together without problems for the remainder of their shift, a duration of
more than four hours. Further, the two employees worked together without any known
issue or animosity for four days the following week until the Grievant was advised of his
termination by the Company, which was seven work days following the incident.

Mr. Negrette is a competent employee and has performed the services required of him
by the Company throughout his employment. There is no indication that the flaring of
tempers, which resulted in the incident, was any more than a one-time incident and it is
very unlikely that it would ever occur again. Unfortunately, angry words were expressed
and the verbal exchange by both parties was made in the heat of the moment. It should
not result in the Employer banishing a worker from his livelihood indefinitely. The
statement that had been made was merely due to frustration and anger. There certainly
should not have been any concerns over the legitimacy of threats by the Grievant toward
Al Sespene.

Finally, it is also clear that by discharging him after the matter was resolved the
Employer has unjustly subjected the Grievant to double jeopardy. There is credible

evidence that McCall and McCarty reached accord on the discipline that Negrette was to receive for having made the "step-outside" remark. This resulted in a verbal reprimand being given to Negrette and a promise on his part that he would not repeat the behavior he was charged with. Thus the Company's representative, the Grievant, and the Union accepted the discipline imposed, and according to the process the matter was resolved at the shop level. Therefore, the Employer no longer had the option of increasing the discipline issued to Negrette for the May 4th remark.

The arbitrator is asked to consider all of the evidence and the fact that there are significant mitigating factors in this spur of the moment one-time incident. The penalty of severing the Grievant's employment relationship was excessive. Negrette had no previous work site history of any incident such as the one that occurred on May 4, 2007 and which in all probability would not occur again. The arbitrator is asked to sustain the grievance and issue an appropriate award directing the Employer to rescind the Grievant's termination, that the Grievant be reinstated to his former position without loss of seniority, and that he be made whole for all lost wages and benefits.

## DISCUSSION AND OPINION

The arbitrator has evaluated all of the evidence, which included the testimony of each witness, the relevant exhibits, and has considered the arguments of the parties that were submitted in their post-hearing briefs. As with most disciplinary arbitrations, the arbitrator recognizes that when evaluating the testimony of witnesses describing their account of what happened during an incident, each individual's perception of what they believe they had seen, heard, and/or had been reported to them often differ while viewing the same scene. In this case, Alex McCall and warehouseman Joe Florez, after being

sworn in, testified as to their observations regarding the behavior of the Grievant on May 4, 2007 and when it was that Negrette uttered the words about taking the argument outside. In addition, there was also the testimony from Welton McCarty, who was called to the scene immediately after the confrontation between Negrette and Sespene. He related the conversation he had with Sespene as to what had occurred and the subsequent action that he took, which included discussing the matter with McCall and Negrette. Al Sespene, the employee who had gotten into the argument with the Grievant, and who was the recipient of Negrette's alleged threat, had retired shortly after the May 4 incident. Although Sespene submitted a statement written on May 9, 2007 regarding the May 4 incident, which was received into the record and marked as Employer Exhibit 2, he was not called to testify to corroborate his statement nor was he available for cross-examination.

In addition to the others noted above, management representatives Mark Clarke and Carmen Lugo, the individuals who were the principal parties in deciding that Negrette's remark about "taking it outside" was determined to be a viable threat, and of such magnitude that termination was warranted for a first time offense, gave testimony as to the reasons for their action.

In reviewing the evidence there is no dispute that Jimmy Negrette, having worked for the Company for almost two years, completed his probationary period and was therefore entitled to be represented by the Union pursuant to the terms of the negotiated Collective Bargaining Agreement that is in effect between the Company and the Union. As such, the Employer's zero tolerance policy for violence or threats of violence does not relieve them from proving, by a preponderance of the evidence that the just cause standard was adhered to when they severed the employment relationship of the Grievant because of his behavior

on May 4, 2007. Inherent in the just cause limitation an arbitrator has within his authority the latitude to rule on whether the penalty imposed is consistent with that standard.

There is no dispute that threatening, belligerent, and/or intimidating behavior by an employee directed toward other employees while at the workplace allows an Employer the discretion to take whatever steps are necessary to remove such recognized threat in order to protect the safety of all its employees. The Employer has an obligation to ensure that those in their employ are not subjected to violence or viable threats of violence in the workplace. However, the Union has argued that the Grievant's discharge was far too severe a penalty, and several mitigating factors were offered in order to persuade the arbitrator that his muttered remark, "lets take it outside" or words to that effect, could not reasonably be construed as having any serious intent to immediately threaten fellow employee Al Sespene with bodily harm. Secondly, the Union contends that after the incident had occurred the shop steward and the supervisor discussed the incident, and the steward was instructed to talk to Negrette and advise him of the seriousness of his behavior and the possible ramifications that could result. According to McCarty, Negrette was unaware that the incident could be considered a threat to Sespene or anyone else, as he explained that he did not mean to act in a threatening manner by his choice of words. Negrette accepted the admonishment and he also agreed with the shop steward, in that he assured the steward there would not be a repeat of the unacceptable behavior, which he made in the course of the confrontation that had taken place between he and Al Sespene. Third, while the supervisor and the Grievant's testimony was markedly different as to when the unacceptable words were spoken, and since the recipient of the alleged verbal threat was not called to testify, Joe Florez, a fellow employee who was also at the scene on May 4, affirmed Negrette's admission that the statement he uttered was made when

Negrette had his back turned to Sespene and while he was heading back to his forklift to go to work (Tr.109).

It is the arbitrator's considered opinion that regardless of whatever reason the Grievant has given to rationalize his unacceptable outburst and loss of temper, and that it was not intended to be a viable threat to Sespene or to anyone else, his behavior and use of words directed toward Sespene was inappropriate whether facing him or walking away. The issue is that the remark was perceived by others as a threat on his part to commit violence and therefore in violation of Rule 701. The Grievant's testimony relating to the anger management methodology he was applying, "What they tell us when you feel a situation is getting heated and you are getting agitated because of past anger, or you feel that something's getting to the point of taking action, you have to say it aloud. You hear it. That's what I did. I calmed down and got on my forklift and worked the rest of the night" (Tr. 109), does not however release him from being accountable for his conduct and the verbal outburst on May 4, 2007.

The arbitrator has not been persuaded by the Union's portrayal that the steward and supervisor resolved the matter with Negrette by his having been given a verbal reprimand, which was accepted. Resolving an issue of such magnitude would require, according to the testimony, further review at a higher level and it is apparent from the testimony of the supervisor and the shop steward that there was no resolution at their step in the disciplinary process (Tr. 90-96). However, there is convincing evidence that the shop steward and the Grievant discussed the matter, with McCarty telling Negrette that his behavior was serious and unacceptable at the workplace. Negrette went on to promise that there would not be a repeat of his anger outburst. The arbitrator has given weight to the fact that after the incident Al Sespene worked in the same vicinity of Jimmy Negrette and

both completed their shift without incident. Further, that most of the following week they worked together and there wasn't an inkling of any animosity between them.

The arbitrator has also reviewed the Company's argument that the Grievant had difficulty with his interpersonal relations, which was evidenced by the petition that the Company had presented at the hearing (Employer Exhibit 5). On May 9 the Grievant's fellow workers submitted to Mr. Carmen Lugo, Warehouse Manager, a petition signed by them on May 7 proclaiming their concern about working with the Grievant: "... It is difficult to work with him due to his incompetence and unprofessional behavior. This issue has been going on long enough. It has been reported to the supervisors on both 2nd and 3rd shift on many occasions. However, nothing has changed in Mr. Jimmy Negrette's behavior towards his work and with his fellow union members. Please take this letter into consideration. An action must be taken to rectify and to prevent further ramification".

When fellow employees have concerns to the degree where they make a concerted effort to bring their displeasure to management, such as the filing of a petition, it certainly demands an in-depth review as to the reasons for their concerns and what should be done to alleviate them. When the petition was combined with the May 4 incident management apparently made the determination that severing Negrette's employment status would bring resolution to the warehouse employees concerns.

The matter assigned to the arbitrator by the parties pertains to the incident of May 4, 2007, and relates to whether there was a viable threat that was made by Negrette to do bodily harm to Al Sespene, which is in violation of the workplace rule. Also, whether the "take it outside" remark could reasonably be construed as immediate, consistent with the general application of the anti-violence prohibition Company rule. It was not over the obvious displeasure on the part of the other employees, which was due to Negrette's

alleged interpersonal deficiencies, as reflected in the petition received into evidence at the hearing over the objection of the Union. The query might be an issue that management may consider giving review to, in order to determine whether there is some link to the apparent undercurrent of dissatisfaction of Negrette over his obvious effort to prove himself an able worker so that it would enhance his job opportunities with the Company. As noted by Supervisor McCall, he gave Negrette several reassignments and placed him into positions where there was some accommodation to other workers who had concerns about Negrett's inter-personal relationships. After Negrette was given the assignment by McCall to "run the floor" it turned out to be a positive assignment and this fact was not in dispute. At the time the Company's representative recognized it to be a success, as McCall noted in his report of Negrette's performance that "Jimmy's way seems to be working out fine and its cutting out the overtime" (Employer Exhibit 1). There is ample evidence that Negrette's desire was to be a quality performer at the worksite. The arbitrator found the statement submitted by Negrette at the time of his termination, which was attached to the grievance report (Joint Exhibit 3), to be particularly moving. However, while the Grievant's goals are admirable the work environment at the warehouse requires compatibility, and Negrette has an obligation to be able to work alongside others in order to accomplish the overall objective of the enterprise.

Based on the record the arbitrator has not been persuaded that the Employer has met its burden of proof that there was just cause to sever the Grievant's employment status without any interim step of progressive discipline over the May 4 incident. It is apparent that supervisor McCall did not feel, after he and the shop steward discussed the incident, that it was necessary to immediately take action by suspending Negrette and escort him off the property, although Mr. Lugo indicated that in his opinion that action should have

been done.  At the same time, however, it must be made clear to Mr. Negrette that his

behavior and comment about "taking it outside" cannot be excused as a simple anger

management technique.  Negrette has an absolute obligation to correct his behavior and

improve his interpersonal relationships with his fellow employees if he wishes to continue

his employment with the Company.  Whether the methodology he used to correct his

anger was self-taught or learned at a management anger course, Negrette nevertheless

remains accountable for controlling any spoken words or expressions that could

reasonably be construed as viable threats or be interpreted as doing another person bodily

harm.  It is conduct that clearly is not in conformity with the Employer's rules of the

workplace.

One final note is that it should be recognized, as testified to by McCarty, that McCall

was new to the job and the incident that occurred was a first time learning experience for

him.  He should, however, be commended for his supervisory skills by his action in taking

a "problem" employee and working with him to find the right work environment for the

good of the organization.  He managed to accomplish that goal.

In finding that the action taken was contrary to the principles of progressive discipline

and just cause, the next step for the parties to take is that upon the Grievant's return to the

facility he and his supervisor, along with the shop steward, should evaluate if in fact he is

a thorn in the side of his fellow workers.  Also, as claimed by him, the resentment that

exists is because he is an employee who wishes to perform quality work.  A review by

management may reveal that the Grievant's conflicts with the other employees may be the

result of an individual who is striving to achieve excellence, and not wanting to give in to

mediocrity by simply not allowing it to be the norm on the warehouse floor.  Only future

management evaluations, including the support of the Union, will uncover the truth as to whether Negrette's complaint has merit.

It is the arbitrator's ruling that the discipline imposed is reduced to a ten-day suspension with loss of pay and benefits for the two-week period. This, combined with a final "wake-up call" to the Grievant, should suffice in that it will emphasize the necessity on his part to control his anger without having to resort to words or conduct that could be construed as a violation of the workplace violence rule.

## DECISION

The termination of Grievant Jimmy Negrette is reduced to a ten-day suspension.

## AWARD

Jimmy Negrette is to be reinstated to his former position without loss of seniority. He is to be made whole for all lost wages and benefits, less the ten-day suspension and any income received from other gainful employment during the interim period.

Jimmy Negrette is to be placed on a "last chance" agreement for a period of one year that is to commence from the day of his reinstatement to the workforce. A repeat of his conduct, which led to the discipline imposed and specifically relates to a violation of the Company's work rules regarding workplace violence or threats of violence, will result in his immediate termination. At the end of the 12-month period the last chance agreement shall be removed from his file.

At the request of the parties the arbitrator will retain jurisdiction for the purpose of resolving any issues that may occur as a result of the implementation of the decision and award

DATED: **9/02/0 8**

WILLIAM E. RIKER, ARBITRATOR

w Offices of David A. Leporiere

2377 Gold Meadow Way, Suite 100
Gold River, California 95670
phone: (916) 526-2850

**RECEIVED**

APR 0 7 2009

April 4, 2008

Beeson, Tayer & Bodine

William E. Riker
ARBITRATOR
15 Santa Paula Avenue
San Francisco, California 94127-1541

**Re:**    *Teamsters Local 853 and JC Paper (Negrette Termination)*

Dear Mr. Riker:

I just received your ruling in the above-referenced matter and am compelled to respond. At page two of your ruling you stated that there were two issues before you at the time of the hearing: "[w]as the Grievant terminated for just cause?" and "[i]f not, what is the appropriate remedy?" However, the parties agreed at the time of the hearing that you would only be ruling on the issue of just cause for termination. The employer sought to introduce evidence related to the issue of the appropriate remedy, if any, but you prohibited the introduction of that evidence and instead agreed to reserve jurisdiction should it become necessary. (See page 76, line 11 through page 79, line 16 of the Arbitration Transcript)

As a result, the employer requests that you rescind your ruling regarding the remedy in this matter and that you and the parties coordinate a date for a hearing on the remedy at which time the employer may introduce the evidence that it sought to introduce at the hearing on January 23, 2008.

Sincerely,

David A. Leporiere

Cc:    Andrew Baker, Esq
Teamsters Local 853

RECEIVED

APR 15 2008

## WILLIAM E. RIKER
ARBITRATOR

Beeson, Tayer & Bodine

April 12, 2008

**VIA FAX AND U.S. MAIL**

Andrew H. Baker, Esq.
Beeson, Tayer & Bodine
1404 Franklin Street, Fifth Floor
Oakland, CA 94612-3208

David A. Leporiere, Esq.
2377 Gold Meadow Way, Suite 100
Gold River, CA 95670

**RE:**  Teamsters Local 853 and J C Paper
       (Jimmy Negrette, Jr. Termination)

Dear Messrs. Baker and Leporiere:

Although we have a conference call set for Wednesday,
April 16th at 10:00 a.m., which was initiated at my request,
I wanted you both to be aware of the following:

That the decision sustaining the grievance is
final and binding;

That the Grievant is to be reinstated immediately;

That in issuing the award the arbitrator took into
consideration the substance of the Company's arguments
as to the protest submitted by several employees over
Negrette's reinstatement because of his interpersonal
relationships, which in fact was the basis of placing
the Grievant on the Last Chance Agreement.

After our conference call on Wednesday, if either party
would prefer to have another day of hearing to present new evi-
dentiary material for the arbitrator to consider, I will ac-
commodate such request.  However, I do want to make it clear
that the employee is to be immediately reinstated while the
Company and Union are presenting their positions relating to
the award and whether the two-week suspension and/or the Last
Chance Agreement is too lenient a penalty.

In any case, the arbitrator will continue to retain juris-
diction for purposes of resolving any issues that may develop
relating to the decision and award.

Sincerely,

William E. Riker
Arbitrator

WER/sr





JC paper

Janitorial ➤ Chemical ➤ Paper supplies

April 14, 2008

VIA Certified Mail # 70010360000395316882

Mr. Jimmy Negrette
1320 Zephyr Court
San Jose, CA 95127



COPY

Dear Mr. Negrette,

This is to notify you that your employment with JC Paper has been terminated as of July 17, 2007 due to harassment of other employees, threats of violence against other employees, and violation of company work rules. This termination is a result of a formal complaint filed against you by other employees of the company and the result of the investigation into these complaints.

Sincerely,

*Mark Clarke*

Mark Clarke
Vice President / General Manager

cc: John Becker, Teamster Local 853, West Bay Division

CM # 7001 0360 0003 95 31 7155

DUANE B. BEESON
NEIL BODINE
ROBERT BONSALL
GEOFFREY PILLER
CATHERINE E. AROSTEGUI
JOHN C. PROVOST
ANDREW H. BAKER
JASON RABINOWITZ*
SHEILA K. SEXTON
MATTHEW MORBELLO**
DALE L. BRODSKY
TEAGUE P. PATERSON***
COSTA KERESTENZIS
LISA W. PAU
DAVID WEINTRAUB
MARGARET A. GEDDES
SARAH SANDFORD-SMITH****
EILEEN M. BISSEN
PETER M. MCENTEE
    *ALSO ADMITTED IN NEVADA AND HAWAII
    **ALSO ADMITTED IN PENNSYLVANIA AND WASHINGTON
    ***ALSO ADMITTED IN NEW YORK
    ****ALSO ADMITTED IN HAWAII

**BEESON, TAYER & BODINE**

ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
1404 FRANKLIN STREET, FIFTH FLOOR
OAKLAND, CALIFORNIA 94612-3208
(510) 625-9700
FAX (510) 625-8275
WWW.BEESONTAYER.COM
54

SACRAMENTO OFFICE
520 CAPITOL MALL
SUITE 300
SACRAMENTO, CA 95814-4714
(916) 325-2100
FAX (916) 325-2120

DONALD S. TAYER
(1932-2001)

OF COUNSEL
JOSEPH C. WAXMAN

Sender's Email: abaker@beesontayer.com

April 28, 2008

William E. Riker                                   *Via facsimile & mail*
Arbitrator
15 Santa Paula Avenue
San Francisco, CA 94127-1541

> *Re:    Teamsters Local 853 and JC Paper*
> *(Jimmy Negrette, Jr. Termination)*

Dear Mr. Riker:

As you will recall, we concluded our conference call of April 16 with you asking the parties to attempt to resolve their differences over the question of whether the Employer's refusal to reinstate the Grievant in the above-captioned matter is subject to your retained jurisdiction. The parties have not been able to agree on this question, and I am therefore writing to solicit a ruling from you on this point.

The following is a reiteration of the basic facts underlying the jurisdictional question here. After you issued your April 2, 2008, award ordering reinstatement of the Grievant, the Employer declined to reinstate the Grievant. By letter dated April 14, 2008, the Employer notified the Grievant that his employment with the Company "has been terminated as of July 17, 2007, due to harassment of other employees, threats of violence against other employees, and violation of company work rules. This termination is a result of a formal complaint filed against you by other employees of the company and the result of the investigation into these complaints." A copy of the April 14, 2008, letter is enclosed. The "formal complaint" referenced here has already been introduced into evidence in this matter as Employer Exhibit 5.

The Union's position is that the allegations contained in the Employer's April 14, 2008, letter do not constitute grounds to refuse reinstatement to the Grievant, and that the dispute over the Grievant's reinstatement is one that is subject to your retained jurisdiction in this matter.

The Employer's position is that it is only obligated pursuant to your April 2 Award to pay back pay to the Grievant from the date of his original termination to July 17, 2007 (less ten day's pay per your Award), and that the April 14, 2008, termination is a separate matter not subject to your retained jurisdiction.

William E. Riker
April 28, 2008
Page 2 of 2

By this letter, the Union is not asking you to render a ruling on the merits of the Employer's argument that it is entitled by virtue of its April 14, 2008, termination letter to refuse the Grievant reinstatement, but only that you rule on the question of whether resolution of the parties' dispute over the Grievant's reinstatement is subject to your retained jurisdiction.

I believe that this letter and its enclosure should provide you adequate information with which to make your ruling on this question, but if you desire additional information from the parties prior to issuing your ruling, please let us know.

Very truly yours,

Andrew H. Baker

AHB/ea

Enclosure

cc:    David A. Leporiere, Esq., Law Offices of David A. Leporiere (facsimile & mail)
       John C. Becker, Sr., Teamsters Local 853 (facsimile)

RECEIVED

MAY 0 5 2008

**WILLIAM E. RIKER**

ARBITRATOR

May 2, 2008

Beeson, Tayer & Bodine

Andrew H. Baker, Esq.
Beeson, Tayer & Bodine, APC
1404 Franklin Street, 5th Floor
Oakland, CA 94612

David A. Leporiere, Esq.
Law Offices of David A. Leporiere
2377 Gold Meadow Way, Suite 100
Gold River, CA 95670

**RE:** Teamsters Local 853 and JC Paper, Inc.
(Jimmy B. Negrette, Jr. - Termination)

Dear Messrs. Baker and Leporiere:

In response to Mr. Baker's letter of April 28, 2008 as
to whether the arbitrator retains jurisdiction in the above-
referenced matter, the answer is in the affirmative.

The parties were very specific about the arbitrator re-
taining jurisdiction relating to any issues that may arise as
a result of the decision and award.

Pursuant to my authority as the arbitrator, I would pro-
pose that a hearing be rescheduled for the purpose of resolving
the issue that has arisen as a result of the Employer's re-
fusal to reinstate the Grievant.

The dates that I have available are: May 27, 28, 30 or
June 10, 11, 2008.

Sincerely,

William E. Riker
Arbitrator

WER/sr

15 SANTA PAULA AVENUE ◆ SAN FRANCISCO, CALIFORNIA 94127-1541 ◆ TELEPHONE/FAX: (415) 664-1538 ◆ WERARB@Earthlink.net
*Member, National Academy of Arbitrators*