1

2

3

4

5

6

7

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8    TEAMSTERS UNION LOCAL 853,                    No. C-08-02464 EDL

9                    Plaintiff,                    **ORDER GRANTING PLAINTIFF'S
                                                   MOTION FOR SUMMARY JUDGMENT**
10        v.

11    J.C. PAPER,

12                    Defendant.
     _____/

13

14        Plaintiff Teamsters Union Local 853 filed this action to obtain an order compelling

15    Defendant J.C. Paper to submit the parties' labor dispute to arbitration before Arbitrator William

16    Riker pursuant to his retained jurisdiction in an underlying matter.  On September 30, 2008, Plaintiff

17    moved for summary judgment on this issue.  Defendant opposed summary judgment and instead

18    urged dismissal of the complaint, arguing that the current labor dispute is separate from the prior

19    dispute on which Arbitrator Riker ruled, so Plaintiff must begin the grievance process anew pursuant

20    to the collective bargaining agreement.  On November 4, 2008, the Court held a hearing on

21    Plaintiff's motion.  For the reasons stated at the hearing and in this Order, Plaintiff's motion is

22    granted.

23    **Relevant facts**

24        Plaintiff and Defendant are parties to a collective bargaining agreement that contains a

25    grievance procedure for the resolution of disputes.  See Leporiere Decl. Ex. 5.  On May 11, 2007,

26    Defendant discharged employee Jimmy Negrette, who was covered by the agreement, for an

27    incident that occurred on May 4, 2007.  On or about May 11, 2007, Plaintiff filed a grievance

28    protesting Mr. Negrette's termination.  On or about August 29, 2007, Plaintiff referred the grievance

     to arbitration for final and binding resolution.  In October 2007, the parties chose William Riker as

the arbitrator.

Meanwhile, on July 17, 2007, Defendant concluded an investigation of complaints against Mr. Negrette.  The investigation did not begin until after Mr. Negrette's termination in May 2007 because the complaints were not received until after the termination decision was made.  See Clarke Decl. ¶ 2; Baker Decl. Ex. B.  The issues raised in the letter were not investigated before making the decision to terminate Mr. Negrette.  See Baker Decl. Ex. A at 76:7-9.

On January 23, 2008, Arbitrator Riker conducted the arbitration.  The only issue before the arbitrator was whether Mr. Negrette was terminated for good cause, and if not, what the remedy should be.  See Leporiere Decl. Ex. 1 at 2.  At the arbitration, Defendant attempted to present the evidence of the May 7, 2007 complaint letter from Mr. Negrette's co-workers, to which Plaintiff objected.  The following exchange between Defendant's counsel and the Arbitrator took place:

> Mr. Leporiere:  You informed us you would not allow any additional testimony of evidence regarding the incidents or events dated subsequent to Mr. Negrette's termination, but that would be possibly part of your decision.
>
> Arbitrator:  That's right, and the rationale is that at the beginning of this hearing, the parties agreed that the Arbitrator would retain jurisdiction and after the decision was made if, in fact, the Arbitrator ruled in favor of the Grievant, we would have an opportunity to review that record.

See Baker Decl. Ex. A at 79:6-16.

On April 2, 2008, Arbitrator Riker issued his decision, ruling that the May 4, 2007 incident did not provide sufficient cause for termination, and ordering that Mr. Negrette be suspended for ten days and reinstated.  See Leporiere Decl. Ex. 1 at 15.  Arbitrator Riker also ordered Mr. Negrette placed on a "last chance" agreement for one year under which he could be immediately terminated if he engaged in conduct similar to that of May 4, 2007.  See id.  The arbitrator's order also stated that: "At the request of the parties, the arbitrator will retain jurisdiction for the purpose of resolving any issues that may occur as a result of the implementation of the decision and award."  See id.

On April 4, 2008, Defendant requested that Arbitrator Riker rescind his ruling regarding the remedy and schedule a hearing to consider the after-acquired evidence of the May 2007 co-workers' complaints that it sought to introduce at the hearing.  See Compl. Ex. B.  By letter of April 12, 2008, Arbitrator Riker confirmed a conference call with the parties, and clarified that in deciding to place

Mr. Negrette on a last chance agreement, he had taken into account the complaints by co-workers. See Compl. Ex. C.  Arbitrator Riker offered to conduct another hearing on the new evidence.  See id. He also stated that: "In any case, the arbitrator will continue to retain jurisdiction for purposes of resolving any issues that may develop relating to the decision and award."  See id.

On April 14, 2008, Defendant sent notice to Mr. Negrette that he was terminated as of July 17, 2007.  See Leporiere Decl. Ex. 2; Clarke Decl. ¶ 4.  On April 16, 2008, Defendant sent to Mr. Negrette a check for wages from May 14, 2007 to July 17, 2007, less the ten-day suspension ordered by the Arbitrator.  See id. Ex. 3; Clarke Decl. ¶ 4.  On April 17, 2008, Plaintiff sent a letter to Defendant stating its position that the April 2008 termination was subject to Arbitrator Riker's retained jurisdiction, but that Plaintiff was grieving that termination as well to preserve its right to do so.  See id. Ex. 4.

On April 16, 2008, during the parties' conference call with the arbitrator, Defendant took the position that Arbitrator Riker did not have jurisdiction over Plaintiff's claim that Defendant failed to reinstate Mr. Negrette, and Plaintiff took the position that this issue did fall within Arbitrator Riker's retained jurisdiction.  See Compl. ¶ 20.  On May 2, 2008, Arbitrator Riker sent a letter to the parties stating that: "In response to Mr. Baker's letter of April 28, 2008 as to whether the arbitrator retains jurisdiction in the above-referenced matter, the answer is in the affirmative.  The parties were very specific about the arbitrator retaining jurisdiction relating to any issues that may arise as a result of the decision and award."  See Compl. Ex. F.

**Discussion**

The dispute in this case centers around the scope of an arbitrator's jurisdiction.  Plaintiff argues that the dispute over Mr. Negrette's reinstatement and subsequent termination is subject to Arbitrator Riker's jurisdiction.  Defendant argues that it has fully implemented the Arbitrator's decision, by paying Mr. Negrette for the time between May and July 2007, and then terminating him immediately for the conduct described in the July 2007 investigation, so there is nothing further for the Arbitrator to do.

The issue of the scope of Arbitrator Riker's jurisdiction over the implementation of his decision should be determined by the arbitrator, not the Court.  See Howsam v. Dean Witter

Reynolds, 537 U.S. 79, 84 (2002) ("Thus 'procedural' questions which grow out of the dispute and bear on its final disposition" are presumptively not for the judge, but for an arbitrator, to decide. . . . . And the comments add that "in the absence of an agreement to the contrary, issues of substantive arbitrability ... are for a court to decide and issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.") (internal citations omitted). While the issue in this case is neither purely procedural nor purely substantive, it falls closer to the former end of the spectrum and is the type of issue that courts have left to the arbitrator to determine.  The parties submitted this dispute and the issue of any potential remedy to the arbitrator, agreed as stated in the arbitration award that the arbitrator would retain jurisdiction for the purpose of resolving any issues that might arise relating to implementation of the award and obtained statements from Arbitrator Riker on two occasions that he continued to retain jurisdiction for purposes of resolving this very issue.  See W.R. Grace and Co. v. Local Union 759, 461 U.S. 757 (1983) ("Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator.").

Further, it was reasonable for Arbitrator Riker to find that he retained jurisdiction over this matter and his determination is entitled to deference.  When the employer fired Mr. Negrette after only "reinstating" him on paper, without letting him return to work, and within the time frame of the last chance agreement ordered by the arbitrator, the arbitrator could properly determine that he retained jurisdiction under the parties' agreement to submit to him the implementation of the reinstatement remedy he ordered.  Under these circumstances, the issue here is best left to the arbitrator.  See Madison Hotel v. Hotel and Restaurant Employees, Local 25, 144 F.3d 855, 857-58 (D. D.C. 1998) ("An arbitrator's view of the issues submitted to him for arbitration therefore receives the same judicial deference as an arbitrator's interpretation of a collective bargaining agreement.").

Further, the purpose of arbitration, "the speedy, flexible and inexpensive resolution of labor disputes" (see Union Switch & Signal Division, American Standard v. United Electrical Workers,

4

**United States District Court**
For the Northern District of California

Local 610, 900 F.2d 608, 616 (3d Cir. 1990)), is best served by further proceedings before Arbitrator

Riker.  Where, as in this case, the parties agreed to submit to the arbitrator both the question of

whether there had been a violation of the collective bargaining agreement and the remedy for any

violation, the Third Circuit stated:

> We can perceive no reason why the Company should not be held to its bargain. We are particularly unimpressed with the sole reason tendered by the Company-that the issues remaining between the parties should be the subject matter of a new grievance. There is no new arbitrable dispute; the grievance that went to arbitration before Arbitrator Das "requests that all employees improperly terminated be reinstated and made whole for lost wages, seniority and benefits,". . . .   "To require the Union to invoke the 'time-consuming and burdensome grievance process again' in order that the parties might resolve the remnants of a dispute which has already once traveled that route would seriously undermine the chief policies underlying resort to those procedures in the first instance: the speedy, flexible and inexpensive resolution of labor disputes. 'The purpose of arbitration is to resolve disputes, not to create new ones.' The grievance arbitration procedures, 'contracted for by the parties, were never intended to force a grievant into the role of a modern day Sisyphus,' and in the circumstances presented we affirm the decision below not to require the Union to run the entire course again.

Union Switch, 900 F.2d 616 (quoting Locals 2222, 2320-2327, etc. v. New England Telephone and

Telegraph, 628 F.2d 644, 649 (1st Cir. 1980)).

Accordingly, the questions of whether Defendant has complied with the arbitration award or

whether the award had been fully implemented are subject to Arbitrator Riker's jurisdiction and are

not properly before this Court.  Therefore, Plaintiff's Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

Dated: November 12, 2008

_Elizabeth D. Laporte_
ELIZABETH D. LAPORTE
United States Magistrate Judge